# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **ALLIED WORLD NATIONAL ASSURANCE COMPANY,** | § § § | |
| *Plaintiff,* | § § | |
| **vs.** | § § | **CIVIL ACTION NO.** 3:24-cv-202 |
| **NRES HOLDINGS, LLC INDIVIDUALLY AND D/B/A NOLAN LIVING, NRES,  NOLAN RED AND/OR NRED; SHADOW CREEK APARTMENTS LLC; NRES MANAGEMENT LLC; SCOTT FEULESS; AND PILAR SERETTI** | § § § § § § § § § | |
| *Defendants.* | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Allied World National Assurance Company ("Allied World"), files this *Complaint for Declaratory Judgment* pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaratory judgment and other relief summarized below, and respectfully shows the following:

## I.
## PARTIES

1.      Allied World is a New Hampshire corporation with its principal place of business in Boston, Massachusetts.

2.      Defendant NRES Holdings LLC, individually and d/b/a Nolan Living, NRES, Nolan Red and/or NRED ("NRES Holdings") is a Delaware limited liability company with a principal place of business in Leawood, Kansas. NRES Holdings can be served with citation

through its registered agent, the Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3.     Defendant Shadow Creek Apartments LLC ("Shadow Creek") is a Missouri limited liability company with a principal place of business in Leawood, Kansas. Shadow Creek can be served with citation through its registered agent, Missouri Corporation #2, Inc., at 1010 Walnut Street, Suite 500, Kansas City, Missouri 64106.

4.     NRES Management LLC ("NRES Management") is a Missouri limited liability company with a principal place of business in Leawood, Kansas. NRES Management can be served with citation through its registered agent, Missouri Corporation #2, Inc., at 1010 Walnut Street, Suite 500, Kansas City, Missouri 64106.

5.     Defendant Scott Feuless ("Feuless") is a resident citizen of Pearland, Brazoria County, Texas and can be served with citation at 3203 Forrester Drive, Pearland, Texas 77584.

6.     Defendant Pilar Seretti ("Seretti") is a resident citizen of Friendswood, Galveston County, Texas and can be served with citation at 1207 Cowards Creek Drive, Friendswood, Texas 77546.

## II.
## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) as this case is based upon the complete diversity of citizenship between the parties and the fact that the amount in controversy exceeds the sum of $75,000 as it pertains to lack of coverage for an underlying wrongful death suit. Jurisdiction of this declaratory judgment action is further appropriate pursuant to 28 U.S.C. § 2201.  An actual controversy exists between the parties having adverse legal interests to warrant the issuance of a declaratory judgment by this Honorable Court. More particularly, Allied World seeks non-monetary relief in the form of a declaratory judgment

regarding whether there is any duty to defend or indemnify in connection with the Underlying Lawsuit.  The action is not hypothetical in nature and would resolve the dispute between the parties.

8.      Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because (1) one or more defendants are a resident of this District, and (2) all or a substantial part of the events giving rise to this matter occurred in this District and these causes of action arise in material part out of actions taken within this District.

### III.
### SUMMARY OF ACTION

9.      Allied World seeks a declaratory judgment that no coverage exists for an Underlying Lawsuit[1] pursuant to an umbrella liability policy[2] issued to named insureds NRES Holdings, Inc. and NRES Holdings LLC.  The Umbrella Policy provides limits of $10,000,000 per occurrence in excess of a commercial general liability policy[3] issued by Everest Indemnity Insurance Company ("Everest") to NRES Holdings, Inc. that provides limits of $1,000,000 each occurrence. However, because the Primary CGL Policy's $1,000,000 limits have not been exhausted by payment, coverage under the Umbrella Policy has not yet been triggered.

10.      Furthermore, the Umbrella Policy provides coverage for **Bodily Injury** caused by an **Occurrence**—that is, an accident. The Underlying Lawsuit, however, alleges Decedent

---

[1] Cause No. 123541-CV: *Scott Feuless and Pilar Seretti vs. NRES Holdings, LLC, individually and d/b/a Nolan Living, NRES, Nolan Red, and/or NRED; Shadow Creek Apartments LLC; and NRES Management LLC;* in the 239th Judicial District Court of Brazoria County, Texas (the "Underlying Lawsuit"). Allied World hereby requests the court take judicial notice of the Underlying Lawsuit.

[2] A true and correct copy of Policy No. 0311-0892 for policy period December 15, 2021 to December 15, 2022 is attached hereto as Exhibit 1, and is hereby incorporated in its entirety, and hereafter referred to as the "Umbrella Policy".

[3] A true and correct copy of Policy No. CF1GL00226211 for policy period December 15, 2021 to December 15, 2022 is attached hereto as Exhibit 2, and is hereby incorporated in its entirety, and hereafter referred to as the "Primary CGL Policy."

Nicholas Feuless ("Decedent") succumbed to carbon monoxide poisoning arising from carbon monoxide discharge.  The carbon monoxide was allegedly released from Decedent's vehicle which Decedent left running in the enclosed garage connected to his apartment. While the Underlying Lawsuit alleges multiple theories of recovery, the crux of Feuless and Seretti's claims are that NRES Holdings, Shadow Creek, and NRES Management failed to comply with statutory regulations requiring carbon monoxide detectors or alarms in Decedent's apartment.  A failure to comply with a statute is not, alone, an **Occurrence** as the term is defined under the Umbrella Policy. However, even if Feuless' and Seretti's claims in the Underlying Lawsuit were the result of an **Occurrence**, the claims are nevertheless excluded by the Umbrella Policy's pollution exclusion that precludes coverage for **Bodily Injury** "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time." **Pollutant** is defined to include a gaseous irritant.  Given the underlying wrongful death allegedly occurred due to the discharge, dispersal, release and migration of carbon monoxide (a gaseous irritant) there is no coverage for any defense or indemnity of the Underlying Lawsuit.

11.      Accordingly, because the Underlying Lawsuit does not present any potentially covered claim, Allied World seeks a declaratory judgment that no duty to defend is owed to NRES Holdings, Shadow Creek and NRES Management.  In addition, because no facts may be developed in the underlying suit that could entitle NRES Holdings, Shadow Creek and NRES Management to coverage under the Umbrella Policy, Allied World seeks a declaration that there is no duty to indemnify as well.

**IV.**
**CONDITIONS PRECEDENT**

12.      All conditions precedent to the filing of this suit have been performed or have occurred.

# V.
# FACTUAL BACKGROUND

**A.**   *The Umbrella Policy:*

13.   Allied World issued Umbrella Liability Insurance Policy No. 0311-0892 to NRES Holdings, Inc. and NRES Holdings LLC, the named insureds, with a policy period from December 15, 2021 to December 15, 2022 (*See* Exhibit 1, the "Umbrella Policy"). The Umbrella Policy provides the following relevant insuring agreement language, which states in pertinent part as follows:

**I.**   **INSURING AGREEMENT – COMMERCIAL UMBRELLA LIABILITY**

**A.**   We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**...

**B.**   This policy applies, only if:

1.   the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**...

14.   The Umbrella Policy defines **Occurrence** in relevant part as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **Bodily Injury** or **Property  Damage** neither expected nor intended from the standpoint of the  **Insured**."

15.   The Umbrella Policy defines **Retained Limit** as follows:

**R.**   **Retained Limit** means the greater of the following amounts:

1.   the total applicable limits of **Scheduled Underlying Insurance** and any applicable **Other Insurance** providing coverage to the **Insured**;

or

2.      the **Self-Insured Retention** applicable to each **Occurrence** that results in damages not covered by **Scheduled Underlying Insurance** nor any applicable **Other Insurance** providing coverage to the **Insured.**

16.      **Scheduled Underlying Insurance** is defined in the Umbrella Policy to mean "the policy or policies of insurance and limits of insurance shown in the Schedule of Underlying Insurance...[,]" and listed on the Schedule of Underlying Insurance in the Primary CGL Policy.

17.      Thus, the Umbrella Policy provides coverage for those sums an **Insured** becomes legally obligated to pay as damages that are in excess of the Primary CGL Policy's $1,000,000 limits because of **Bodily Injury** caused by an **Occurrence**.

18.      Additionally, the Umbrella Policy contains the following Pollution Exclusion that provides in relevant part as follows:

**Q.      Pollution**

This policy does not provide coverage for:

1.      Any **Bodily Injury**, **Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.      Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**[.]

\* \* \*

However, Paragraph 1. of this exclusion will not apply if coverage for such **Bodily Injury** or **Property Damage** as is described in subparagraphs 1) through 6) below is provided by **Scheduled Underlying Insurance:**

\* \* \*

> Coverage under this policy for such **Bodily Injury** or **Property Damage** as described in subparagraphs 1) through 6) above will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

19.    **Pollutant** is defined in the Umbrella Policy to mean "any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste..."

**B.**    ***The Underlying Lawsuit:***

20.    Feuless and Seretti filed the Underlying Lawsuit against NRES Holdings, Shadow Creek and NRES Management.[4]

21.    In the Underlying Lawsuit, Feuless and Seretti allege NRES Holdings is a real estate investment and management company that wholly owns NRES Management, a property management company that manages NRES Holdings' apartment property portfolio. (*See* Exhibit 3, ¶¶ 14-15). In or about 2013, NRES Holdings purportedly formed Shadow Creek to acquire the Avenues at Shadow Creek Ranch apartments located at 12501 Broadway Street in Pearland, Texas (the "Apartments") that was built in or about 2012. (*Id.* ¶¶ 16-17). Thereafter, NRES Management allegedly took over all property management responsibilities of the Apartments, including leasing apartments and communicating with residents and prospective residents. (*Id.* ¶ 18).

22.    Feuless and Seretti further allege in the Underlying Lawsuit that they are the parents of Decedent, who leased a unit at the Apartments. (*Id.* ¶ 33). However, it is alleged that on or about

---

[4] A true and correct copy of Plaintiffs' First Amended Petition, their most recent live pleading in the Underlying Lawsuit, is attached hereto as Exhibit 3, and is hereby incorporated in its entirety.

March 13, 2022, Decedent, while in his apartment unit, was overcome by carbon monoxide and died as a result. (*Id.* ¶ 37).

23.     Feuless and Seretti allege that, effective September 9, 2019, the City of Pearland adopted the 2018 International Building Code, the 2018 International Fire Code and the 2018 International Property Maintenance Code, which required carbon monoxide alarms be installed in existing dwelling units with attached private garages. (*Id.* ¶¶ 29-30). However, neither NRES Holdings, Shadow Creek, nor NRES Management installed carbon monoxide detection devices in the Apartments before March 14, 2022. (*Id.* ¶ 31). Based on these factual allegations, Plaintiffs have asserted Defendants are responsible for Decedent's carbon monoxide poisoning and death (*Id.* ¶¶ 40-57).

## VI.
## CAUSES OF ACTION

24.     Pursuant to Federal Rule of Civil Procedure 57, Allied World seeks declaratory judgment under  28 U.S.C. § 2201 and Chapter 37 of the Texas Civil Practice and Remedies Code resolving all issues in this insurance coverage dispute and declaring the parties' respective rights and obligations with respect to all matters in controversy. Among other things, Allied World seeks declarations that:

a.     The Underlying Lawsuit does not allege **Bodily Injury** that resulted from an **Occurrence**;

b.     The Umbrella Policy's pollution exclusion applies to preclude coverage for all of Feuless' and Seretti's claims in the Underlying Lawsuit;

c.     Allied World will never have a duty to defend NRES Holdings, Shadow Creek and NRES Management in the Underlying Lawsuit under the provisions of the Umbrella Policy;

d.     The duty to indemnify is justiciable because no facts could be developed in the Underlying Lawsuit that could bring the alleged acts of NRES Holdings,

Shadow Creek and NRES Management within the Umbrella Policy's coverage;

e.     Allied World has no duty to indemnify NRES Holdings, Shadow Creek and NRES Management in the Underlying Lawsuit under the provisions of the Policy;

f.     Allied World is awarded its costs and reasonable and necessary attorneys' fees as are equitable and just; and

g.     Such other and further declarations as may be just and necessary to resolve all justiciable disputes between and/or among the parties.

25.     Allied World reserves the right to amend the allegations in its Complaint as may be just and proper.

## VII.
## CONCLUSION AND PRAYER

26.     WHEREFORE, PREMISES CONSIDERED, Plaintiff Allied World prays that Defendants Feuless, Seretti, NRES Holdings, Shadow Creek and NRES Management be cited to appear and answer herein, and upon final hearing and trial:

a.     That Allied World have and recover a final judgment declaring all rights and obligations between and among the parties as requested above and also as may be just and necessary to resolve all matters in dispute between and among the parties regarding this insurance coverage dispute; and

b.     That Allied World have and recover such other and further relief as may be just and necessary.

Respectfully submitted,

**AKERMAN LLP**

_/s/ Kristen McDanald_____
Kristen W. McDanald
Texas Bar No. 24066280
Federal Bar No. 975848
Email:  Kristen.McDanald@Akerman.com
1300 Post Oak Blvd., Suite 2300
Houston, TX 77056

9

Telephone: (713) 623-0887
Facsimile:  (713) 960-1527

**ATTORNEY-IN-CHARGE FOR
ALLIED WORLD NATIONAL
ASSURANCE COMPANY**

**OF COUNSEL:**

AKERMAN LLP
Rick Gene Boepple Jr.
Texas Bar No. 24092150
Email:  Rick.Boepple@Akerman.com
1300 Post Oak Blvd., Suite 2300
Houston, Texas  77056-3000
Telephone:  (713) 623-0887
Facsimile:   (713) 960-1527

**PLAINTIFF ALLIED WORLD NATIONAL
ASSURANCE COMPANY**

77018084;1